UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
-------------------------------------------------

BRIAN N. DRAKE,

                 Petitioner,

-v-

                 C.A. No. 04-11426(REK)

UBS FINANCIAL SERVICES, INC.,

                 Respondent.
-------------------------------------------------

FILED
IN CLERKS OFFICE

2004 OCT -8  A 11: 18

U.S. DISTRICT COURT
DISTRICT OF MASS.

## MEMORANDUM IN SUPPORT OF DRAKE'S AMENDED MOTION TO VACATE ARBITRATION AWARD OR ALTERNATIVELY, REQUEST FOR REMAND

Petitioner Brian N. Drake ("Drake") submits this Memorandum in support of his motion for an Order vacating an arbitration award (the "Award"), a copy of which is annexed to the original Application to Vacate filed in state court prior to removal, or alternatively, remand to the arbitrators for an explanation as to whether they heeded the call of respondent UBS Financial Services, Inc. ("UBS") to disregard controlling New York law. Additionally, Drake's motion to compel production of documents and interrogatory answers is pending, and Drake requests the right to supplement this motion in the event the Court grants the motion to compel.

### Introduction and Background

The facts giving rise to the Arbitration are set forth in the parties' pleadings in the Arbitration, annexed as Exhibits A-H to the Affidavit of William A. Jacobson ("Jacobson Aff't").[1]

---

[1] Because the person transcribing the audio tapes of the hearings paginated the final hearing tape beginning again at page "1," we have separated the transcript references into Transcript (Exhibit E) and Transcript II (Exhibit F).

1

Drake is a stockbroker formerly employed by UBS. This case arises out of an arbitration (the "Arbitration") between the parties held under the auspices of NASD Dispute Resolution, Inc. The arbitrators ruled in favor of UBS, awarding UBS all of the damages, attorney's fees, interest, and costs UBS requested. Drake timely moved to vacate the arbitration award in state court, which proceeding was removed by UBS to this Court.

Drake is cognizant of the high hurdle to overturn an arbitration award. The specific facts of this arbitration, however, support vacating the Award, or at a minimum, remanding the case to the arbitrators. As the United States Supreme Court has noted, courts "should, if anything, be even more scrupulous to safeguard the impartiality of arbitrators than judges, since the former have completely free rein to decide the law as well as the facts and are not subject to appellate review." Commonwealth Coatings Corp. v. Cont'l Cas. Co., 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968).

The panel of arbitrators exhibited evident partiality and misconduct, and manifestly disregarded the law. The Award should be vacated due to (a) the call by UBS for the panel to disregard controlling New York law, (b) the panel's refusal to enforce against UBS the panel's own scheduling orders thereby permitting UBS to produce documents and exhibits at the last minute to the prejudice of Drake, (c) the panel's allowing UBS to introduce evidence as to the exchange of settlement offers (albeit not the actual dollar amount of the offers and counteroffers), in clear violation of the NASD Arbitrator's Manual which provides that "no party should be allowed to introduce evidence of any settlement offer that it made or received," (Jacobson Aff't, Exh. H, at 29), and (d) the panel's allowing UBS to introduce evidence as to UBS' investigation of

the panel members, including the maintenance of investigative databases on the panel, thereby intimidating the panel.

## UBS Called Upon The Arbitrators To Disregard Controlling New York Law

As set forth in the Exhibits to the Jacobson Affidavit, in connection with hiring Drake, UBS induced Drake to leave his prior employment and to bring his book of business to UBS. Drake agreed. In exchange for Drake joining UBS and bringing his book of business, UBS paid signing bonuses in the form of "Employee Forgivable Loans" ("EFLS"). The EFLS, of course, were not true "bonuses." Rather, one of the reasons for the EFLS was to reimburse Drake for the inevitable lost production during the transition from one firm to another.

Drake did, in fact, bring his book of business to UBS. While employed by UBS, Drake generated commissions for UBS that offset the amount of the EFLS. In other words, UBS was not out of pocket a penny in connection with the hiring of Drake. To the extent UBS advanced money to Drake, UBS had been paid back in every real sense of the word.

Drake, unfortunately, could not make a living at UBS after a number of years because of a number of factors, some of which were beyond his control. These factors included a general market downturn, Drake's location in a UBS office that was not advantageous, and a unilateral change by UBS in its compensation system that pushed Drake into a lower payout category. Most important, however, is that UBS made it difficult for Drake to sponsor seminars and other promotional methods that Drake had used in the past to generate business.

3

Because of these factors, Drake's production dropped substantially. It got to the point that Drake was not making any significant net pay. The reason for this is that although the EFLS were forgiven *annually*, UBS withheld money for taxes on the forgiven amounts *monthly* from Drake's paychecks. After deductions for taxes, Drake was not making enough to continue. The entire purpose of the EFLS, to assist Drake in rendering personal services, became frustrated. It became impossible for Drake to continue at UBS.

Faced with the economic impossibility of staying at UBS, Drake resigned. After Drake's resignation, UBS filed the Arbitration, seeking repayment of the unforgiven balance of the EFLS, plus interest, attorney's fees and costs.

UBS presented the case to the arbitrators as nothing more than a routine promissory note dispute, as to which the reasons why Drake left were irrelevant. UBS' position, however, was contrary to clear and controlling New York law, which held that the EFLS were not instruments for the payment of money only, and that the promissory notes attached to the EFLS are not treated like normal promissory notes. The very types of EFLS at issue here were addressed by the New York State courts[2] in the case of PaineWebber Jackson & Curtis, Inc. v. Aronson, 495 N.Y.S.2d 396 (1st Dept. 1985). In Aronson, PaineWebber (the same legal entity as UBS here, prior to several mergers and name changes) sued a broker on an EFL. As UBS does here, PaineWebber claimed that it was an open and shut case, and that the promissory notes required the payment of money by the broker regardless of any other employment factors. The Court disagreed, in language that is highly pertinent here:

---

[2] The EFLS provide that they are governed by New York law.

4

> *"It is patently apparent that the document at issue does not call for the payment of money only.* Indeed, it calls for monetary payment only upon Aronson's failure to complete three years of employment with PaineWebber, or to fulfill other employment related conditions. *Although it purports to be a promissory note, the document by its terms more closely resembles an agreement for the provision of services* by Aronson to PaineWebber for a three year period, which if breached by Aronson obligates his return of advance compensation." (495 N.Y.S.2d at 397; emphasis added.)

The Court in <u>Aronson</u> went on to note that because the EFL is not an instrument for the payment of money only, but is more along the lines of a personal services contract, all of the defense that might apply in an employment case apply to the "promissory notes" that are part of the EFL:

> "In denying Paine Webber's motion for summary judgment, it should also be noted that Aronson's affidavit in opposition to the motion makes allegations of material misrepresentations against Paine Webber and states that these misrepresentations caused Aronson monetary injury at least equal to Paine Webber's claim on the 'note'.... These same representations will be at issue in determining Aronson's obligation under Paine Webber's 'promissory note.' There will then be common questions of fact making it entirely appropriate for Aronson to assert his counterclaims in the present action." (Id., at 398)

UBS disputed that <u>Aronson</u> applied. UBS, however, went one step too far. UBS argued that even if <u>Aronson</u> did apply, the arbitrators should ignore <u>Aronson</u> since <u>Aronson</u> "does not appear to be sound." (Jacobson Aff't Exh. C, at 8) At the hearings, UBS repeated its argument that <u>Aronson</u> did not apply. (Jacobson Aff't Exh. F, at pages 48-49).

It may be that UBS disagreed with the controlling law on this point, but that did not give UBS the right to ask the arbitrators to disregard this controlling law. While proving manifest disregard of the law normally requires proof that the arbitrators understood the law and decided to disregard the law, where a party urges arbitrators to

5

disregard the law, and the parties' claims are of doubtful validity, the court can infer that the arbitrators manifestly disregarded the law. See, e.g., Montes v. Shearson Lehman Brothers, Inc., 128 F.3d 1456, 1464 (11th Cir. 1997)(vacating arbitration award where employer's counsel urged panel to disregard the law).

In the alternative, if the Court is hesitant to vacate the Award, we request that the case be remanded to the arbitrators for clarification as to whether the arbitrators heeded UBS' call to disregard Aronson. Tripi v. Prudential Securities, Inc. 303 F.Supp.2d 349, 356 (S.D.N.Y. 2003)(remanding to arbitrators for explanation as to dollar amount of award).

**The Arbitrators Exhibited Evident
Partiality and Undue Means In
The Handling of the Hearings**

The evidence of evident partiality and undue means consists of a pattern of conduct by the arbitrators in (a) disregarding mandatory timetables for the exchange of evidence, (b) permitting UBS to produce prejudicial hearing exhibits as late as the evening before the hearings started, and (c) allowing UBS to introduce evidence of settlement discussions, and UBS' investigation of the arbitrators.

On March 12, 2004, the arbitrators ordered UBS to produce, by March 17, various documents, including documents showing UBS' calculation of damages. (Jacobson Aff't Exh. E, at 8-9) On or about March 17, 2004, UBS represented that it had produced all such documents. (Jacobson Aff't Exh. E, at 9) Yet, the weekend before the Tuesday start of the hearings, UBS produced its interest rate calculation for the first time. (Jacobson Aff't Exh. E, at 9-10) Late in the afternoon the day before the hearing, UBS produced approximately 60 pages of time records, which were the basis for the attorney's

6

fee request. (Jacobson Aff't Exh. E, at 10) The late production of the time records deprived Drake of an opportunity to take discovery as to the entries. (Jacobson Aff't Exh. E, at 11-14)

The time records were highly prejudicial, containing disclosures about the timing and sequence of settlement offers and counter offers, albeit not the dollar amounts, which gave the impression that Drake was to blame for the failure of the case to settle. (Jacobson Aff't Exh. E, at 48, 161-162, 210-211) The time records also revealed that UBS maintained investigatory databases on the arbitrators. Drake's counsel objected to this information even being disclosed to the arbitrators, because of the likelihood of intimidation, but UBS' counsel told the arbitrators anyway. (Jacobson Aff't Exh. E, at 212-216)

Drake's counsel vigorously and repeatedly objected to the use of the late and prejudicial time records. (Jacobson Aff't Exh. E, at 48, 158-162, 210-216) Despite these objections, the panel accepted the document in evidence (Jacobson Aff't Exh. E, at 217), and apparently relied upon the document in awarding attorney's fees. At the end of the hearings, Drake's counsel made sure to preserve the objections when the panel asked whether the parties had a full and fair opportunity to be heard. (Jacobson Aff't Exh. F, at 57)

Again, Drake is cognizant of the fact that courts are reluctant to second-guess procedural decisions by arbitrators. Here, however, the issue is not mere procedure. Rather, it is whether Drake was denied a fundamentally fair hearing by conduct which resulted in UBS being allowed to violated the arbitrators' own scheduling orders, being allowed to present evidence as to off-the-record settlement discussions, and

7

being allowed to intimidate the arbitrators by calling the arbitrators' attention to the fact that UBS maintained investigatory databases on the arbitrators.

In Bowles Financial Group, Inc. v. Stifel, Nicolaus & Co., Inc., 1993 WL 663326 (W.D.Okla. 1993), the Court noted that merely informing arbitrators of settlement offers, while deplorable, was not in and of itself enough to vacate an arbitration award, where the arbitration rules did not address the issue and arbitrators expressly stated "that they would not consider the settlement offer...." Here, by contrast, the NASD Arbitrator's Manual (Jacobson Aff't, Exh. H) specifically states that "no party should be allowed to introduce evidence of any settlement offer that it made or received." Moreover, the arbitrators made no statement that they would disregard the evidence of settlement offers.

As to the intimidation of the arbitrators by means of informing the arbitrators that UBS kept an investigatory database on them, the arbitrators acknowledged that they were aware of such databases, but did not affirmatively state that they would not be influenced or intimidated.  See, e.g., Sirotsky v. New York Stock Exchange, 347 F.3d 985, 990 (7th Cir. 2003)(noting that actions intended to intimidate arbitrators can constitute "undue means" under FAA); Pour Le Bebe, Inc. v. Guess? Inc., 112 Cal.App.4th 810, 832, 5 Cap.Rtpr.3d 442, 461 (2003)(same).

**Conclusion**

The Award should be vacated, or alternatively, the case remanded to the arbitrators.

Dated: October 7, 2004

Respectfully submitted,

William A. Jacobson, Esq. (# 544791)
Shanna L. Pitts, Esq. (*pro hac vice*)
Law Offices of William A. Jacobson, Inc.
850 Turks Head Building
Providence, RI 02903
Tel. 401-490-7500
Fax. 401-490-5680
E-mail waj@wjacobson.com

Attorneys for Drake

**CERTIFICATION OF SERVICE**

I hereby certify that on this 7th day of October, 2004, I served a true and correct copy of the foregoing, via first class mail, postage prepaid, upon the offices of:

Kevin G. Mahoney, Esq.
Menard, Murphy & Walsh LLP
60 State Street, 34th Floor
Boston, MA 02109

William M. Ezjak, Esq.
Schuyler, Roche & Zwirner, P.C.
One Prudential Plaza
130 East Randolph Street
Chicago, IL 60601