IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BRIAN N. DRAKE,<br>　　　Petitioner, | )<br>)<br>)　The Honorable Robert E. Keeton<br>) |
| v. | )　Case No. 04-11426 REK<br>) |
| UBS FINANCIAL SERVICES INC.,<br>　　　Respondent. | )<br>)<br>) |

## UBS'S MEMORANDUM IN OPPOSITION TO DRAKE'S AMENDED MOTION TO VACATE ARBITRATION AWARD OR ALTERNATIVELY, REQUEST FOR REMAND

Respondent UBS Financial Services, Inc. ("UBS") submits this Memorandum in Opposition to the Amended Motion of Petitioner Brian N. Drake ("Drake") to Vacate Arbitration Award or Alternatively, Request for Remand. Additionally, UBS submits this Memorandum in support of its Cross-Motion for Confirmation of NASD Arbitration award.

## INTRODUCTION

In the NASD arbitration that is the subject of Drake's Motion to Vacate, UBS sought to collect on the balance due, plus interest, costs and attorneys' fees, on two promissory notes that Drake executed in return for monies advanced to him.

On April 6 and 7, 2004, a three-person panel of NASD arbitrators conducted a full evidentiary hearing on UBS's claims, Drake's defenses and UBS's responses to Drake's defenses.

In an Award issued on May 5, 2004, the panel ruled in favor of UBS, ordering Drake to pay all of the damages, attorneys' fees, interest and costs that UBS requested.

Drake subsequently moved to vacate the Award in state court; UBS removed the proceeding to this Court; and Drake subsequently filed his Amended Motion to Vacate or Alternatively, Request to Remand.

In his Amended Motion to Vacate, Drake argues that the Award should be vacated on the grounds that the arbitrators manifestly disregarded the law, and showed evident partiality and undue means. Specifically, Drake contends that the Award should be vacated because: (1) UBS allegedly called on the panel to disregard controlling New York law; (2) the panel permitted UBS to produce documents after the deadline in the panel's scheduling order; (3) the panel admitted billing records relating to UBS's claim for attorneys' fees that evidenced that settlement offers were exchanged (but from which the contents of those settlement offers were redacted); and (4) the billing records admitted by the panel also evidenced that UBS conducted due diligence on the arbitrators, thereby allegedly intimidating the arbitrators.

None of Drake's arguments has any merit.

Drake's "manifest disregard of law" argument should be rejected for several reasons: (1) contrary to Drake's contention, the record shows that UBS did not call on the panel to disregard the case cited by Drake as controlling New York law; (2) the single New York case cited by Drake was not controlling law – UBS vigorously disputed its meaning and applicability; and (3) there are no comments by the arbitrators in the record indicating that they recognized applicability of the case cited by Drake (but then ignored it). The panel's award is amply supported by the facts and law.

Drake's objections to the panel's procedural and evidentiary rulings are similarly lacking in merit. Under federal law and NASD rules, arbitrators have broad discretion in making procedural and evidentiary rulings and the rulings challenged by Drake were amply justified.

Contrary to Drake's contention, neither federal law nor NASD rules prohibit the admission of settlement communications from which the contents of the communications have been redacted (and Drake admits that the billing records admitted in support of UBS's attorneys' fee claim were so redacted). In addition, the panel chairman's comments in overruling Drake's objection to the admissibility of time records reflecting that UBS conducted due diligence on the arbitrators contradicts Drake's suggestion that the arbitrators were "intimidated" by that information.

Accordingly, Drake's Motion to Vacate Arbitration Award or Alternatively, Request for Remand should be denied in its entirety and the Court should grant UBS's Motion to Confirm.

## BACKGROUND

As set forth in the Exhibits to the Jacobson Affidavit and to the Ejzak Affidavit, in the underlying NASD arbitration proceeding, UBS sought to collect on the balance due, plus interest, costs and attorneys' fees, on the two promissory notes, Promissory Note #10146 and Promissory Note #30623, (the "Notes") that Drake executed in return for monies advanced to him. The Notes are also known as Employee Forgivable Loans ("EFLs") because the loan balances were forgivable in equal annual installments provided that Drake was an employee on the annual forgiveness date. The balance was due on the Notes because Drake voluntarily resigned before the loans were fully forgiven.

Drake did not dispute the making of the Notes or the balance due. Rather, citing PaineWebber Jackson & Curtis, Inc. v. Aronson, 495 N.Y.S.2d 396 (1st Dept. 1985), Drake contended that enforcement of the terms of the Notes was subject to what might loosely be characterized as "employment-related defenses." Specifically, Drake contended that he should not have to repay the Notes because (1) the purpose of the EFLs was supposedly frustrated

because, for a variety of reasons, Drake felt he was not making enough income to continue working at UBS; (2) the Notes were allegedly payments for "bringing his book of business" to UBS; and (3) as a matter of equity, the loans were entirely "repaid" by the commissions Drake generated while employed by UBS; thus, UBS would be "unjustly enriched" if Drake were ordered to repay the balance due on the Notes.

UBS vigorously disputed the factual and legal basis for all of Drake's defenses. UBS cited numerous NASD Awards which enforced UBS promissory notes (EFLs) as written, including awards of damages, interest, attorneys' fees and costs. UBS also cited several court decisions confirming arbitration Awards enforcing repayment of UBS promissory notes (EFLs).

UBS disputed the meaning and applicability of the <u>Aronson</u> decision on which Drake relied. UBS distinguished <u>Aronson</u> factually, on the grounds that, unlike the EFL in <u>Aronson</u>, Drake's EFLs expressly provided that they do not create an employment contract, as follows:

> **Not an Employment Contract.** The Employee expressly acknowledges that this Note is not an employment contract or an agreement to employ him/her for a specified period of time or a promise of continued employment with PaineWebber for any period whatsoever.

Note at 5.

Thus, <u>Aronson</u>'s conclusion that the EFL in that case was actually a contract for services did not apply, because Drake's EFLs expressly provided that they did not constitute employment contracts.

Citing New York and Massachusetts case law on contract interpretation, UBS also showed that Drake's EFLs were not employment agreements and that the forgiveness schedule did not create a term of employment.

UBS also distinguished <u>Aronson</u> procedurally, noting that in <u>Aronson</u>, the Court merely denied summary judgment under New York's special statute for promissory notes – the Court did not hold that the EFL in question was unenforceable on the merits. The <u>Aronson</u> Court held:

> It is apparent that Aronson's obligation to pay any amount on the "note was conditioned on his status as a Paine Webber employee, which status is impossible to determine from the "note" itself. This Court has held squarely that "[w]here proof outside the instrument is necessary to establish the underlying obligation, the CPLR 3213 procedure does not apply."

<u>Aronson</u>, 495 N.Y.S.2d at 397 (citation omitted) (alteration in original).

Thus, unlike the procedural posture of the <u>Aronson</u> case, this case comes before the Court following a full evidentiary hearing on the merits.

UBS also disputed the factual and legal basis of Drake's specific employment-related defenses.[1] Contrary to Drake's "frustration of purpose" argument, UBS presented testimony that the purpose of the EFL advance was to provide funds for the broker for a comparatively brief transition period after leaving his former employer and coming to UBS. Citing New York and Massachusetts case law on the requirements for application of the doctrine of frustration of purpose, UBS also showed that it was not sufficient for Drake merely to allege that his continued employment had become unattractive or even economically impossible to avoid repayment of his EFLs, because the EFLs expressly allocated to Drake the risk that he would be obligated to repay the outstanding balance on the EFLs in the event he resigned, whether voluntarily or involuntarily (except for death or disability) before the Notes were fully forgiven.

---

[1] Although Drake presents his specific employment-related defenses in his Motion to Vacate, he does not appear to contend that the panel manifestly disregarded the specific legal underpinnings he asserted (equity, unjust enrichment, frustration of purpose) in support of these defenses (in contrast to his argument that the panel disregarded <u>Aronson</u>). Accordingly, UBS briefly discusses its responses to these defenses in order to dispel Drake's suggestion that they went entirely unrebutted in the arbitration. To the extent that Drake contends in his reply brief that the panel manifestly disregarded the law with regard to his specific defenses, UBS reserves the right to respond to such argument.

Contrary to Drake's contention that monies advanced pursuant to the EFLs were a payment for his book of business or were repaid by the commissions he generated at UBS, UBS showed that both contentions were contradicted by the express terms of Drake's EFLs. UBS also presented testimony that Drake was not obligated to transfer accounts in order to receive the EFL advance. As to the legal basis for Drake's position, Drake acknowledged that unjust enrichment is a claim, not a defense (and Drake did not assert any counter-claims against UBS). UBS also noted that, under New York and Massachusetts law, a claim for unjust enrichment may not be asserted where the matter in dispute is governed by an express contract – as here, repayment of the EFLs is governed by the terms of the EFLs.

The long and the short of it is, the case was vigorously disputed by both sides and the panel's award in favor of UBS is amply supported by the record facts and law.

## ARGUMENT

### I. DRAKE FAILED TO ESTABLISH THAT THE ARBITRATORS MANIFESTLY DISREGARDED CONTROLLING LAW.

The statutory bases for review of arbitration awards are set forth at 9 U.S.C. § 10. See Advest, Inc. v. McCarthy, 914 F.2d 6, 8 (1st Cir. 1990). An arbitration award may be vacated if is was procured by corruption, fraud, or undue means, or if the arbitrators were corrupt, guilty of misconduct, exceeded their authority. 9 U.S.C. § 10 (2002). In addition to the statutory bases of review provided in § 10, the First Circuit has recognized that a court may vacate an arbitration award where arbitrators have acted in manifest disregard of the law. Advest, 914 F.2d at 8. However, bases for review outside of § 10 are "among the narrowest known in the law." First State Ins. Co. v. Banco de Seguros Del Estado, 254 F.3d 354, 357 (1st Cir. 2001) (citation

omitted). Since Drake cannot establish that the arbitrators manifestly disregarding the law under this narrow review, this court should deny Drake's Motion to Vacate the Arbitration Award.

### A. The NASD Arbitrators Did Not Manifestly Disregard Controlling Law Under the Standard Set by the First Circuit.

As the First Circuit stated in <u>Advest</u>, arbitration awards are subject to review "where it is clear from the record that the arbitrator recognized the applicable law – then ignored it." <u>Advest</u>, 914 F.2d at 8. As the <u>Advest</u> court explained, to vacate an arbitration award based on manifest disregard:

> "there must be some showing in the record, other than the result obtained, that the arbitrators knew the law and expressly disregarded it." (citation omitted). "In this context, then, 'disregard' implies that the arbitrators appreciated the existence of a governing legal rule but wilfully decided not to apply it." (citation omitted)

Advest, 914 F.2d at 9-10 (quoting <u>O.R. Securities, Inc. v. Professional Planning Assoc., Inc.</u>, 857 F.2d 742, 747 (11th Cir. 1988). See also <u>Prudential-Bache Securities, Inc. v. Tanner</u>, 72 F.3d 234, 240 (1st Cir. 1995) (citing <u>Advest</u> standard); <u>Trustees of Boston University v. Beacon Laboratories, Inc.</u>, 270 F.Supp.2d 88, 90 (D. Mass. 2003) (same) and <u>Trustees of Lawrence Academy at Groton v. Merrill Lynch Pierce Fenner & Smith, Inc.</u>, 821 F.Supp. 59 (D. New Hampshire 1993) (same).

The First Circuit has also recognized that a showing of manifest disregard is "extremely difficult" where the arbitrators have opted not to state reasons for their award, as they are permitted to do (and as they opted to do here). <u>Advest</u>, 914 F.2d at 9-10, (citing <u>O.R. Securities</u>, 957 F.2d at 747 & n. 4); <u>Tanner</u>, 72 F.3d at 240 (citing <u>Advest</u>).

The First Circuit's decision in <u>Tanner</u> is instructive here. In <u>Tanner</u>, the appellant, a brokerage firm, appealed the district court's confirmation of an NYSE arbitration award ordering the brokerage firm to pay damages to terminated employees. The First Circuit stated the standard (set forth above) for establishing manifest disregard, and noted the extreme difficulty of prevailing on this standard where the panel opted not to state the reasons for its award. The

-7-

brokerage firm contended that the panel manifestly disregarded controlling Puerto Rican statutory authority governing liability and remedies arising from the discharge. The First Circuit noted that the employees presented evidence of damages in contradiction of the brokerage's position. The First Circuit found that: "Given the fact that the panel members heard conflicting arguments, it is difficult to maintain that they both recognized the applicable law and then ignored it, without the benefit of a statement of their reasons." Tanner, 72 F.3d at 240. The First Circuit held that the brokerage firm had not met its burden of proving manifest disgard and affirmed the district court's confirmation of the award.

Here, Drake contends that he presented the Aronson case to the panel as authority for the proposition that the EFL in question was "more along the lines of a personal services contract" and, thus, subject to Drake's employment related defenses. From here, however, Drake's argument becomes somewhat vague and murky. Presumably, one would necessarily expect Drake to argue that the panel must inevitably have recognized that the Aronson case was controlling law – but then ignored it, in substance arguing that, contrary to Aronson, the panel ignored Drake's employment related defenses. Drake, however, does not appear to make this argument anywhere in his brief.

In fact, Drake cannot establish, as he must under Advest, Tanner and other First Circuit precedent, (1) that the arbitrators must inevitably have recognized that the purported rule in Arsonson was controlling law, and (2) that the panel then ignored it – and, thereby, ignored Drake's employment related defenses.

Drake cannot establish that the arbitrators must inevitably have recognized the purported rule in Aronson, because, as Drake acknowledges, UBS vigorously disputed that Aronson applied. UBS presented the panel with extensive evidence distinguishing Drake's EFLs from the

EFL considered by the court in Aronson. Whereas the Aronson court found that the EFL in question "by its terms more closely resembles [a personal services contract]," UBS showed, as discussed above, that Drake's EFL expressly provided that it was not an employment agreement or an agreement for a term of employment. UBS further argued, citing New York and Massachusetts law on contract interpretation, that the multi-year forgiveness period in Drake's EFL did not expressly or impliedly create a multi-year term of employment.

Thus, as in Tanner, given the fact that the panel members heard conflicting arguments as to the applicability of Aronson, and absent any explanation by the panel of the reasons for their decision, Drake cannot satisfy his burden of showing that the panel inevitably recognized that Aronson was controlling law.

Here, Drake cannot even establish that the panel ignored Aronson. Generally, (as in Tanner) if a panel allegedly ignores a controlling authority, it would be reflected in the outcome. Here, however, the panel could have determined that Aronson required them to consider Drake's employment-related defenses, but still rule in favor of UBS on the grounds that Drake's employment-related defenses were not persuasive. Given that UBS vigorously disputed Drake's employment-related defenses, and absent a statement by the panel of the reasons for their award, Drake cannot establish that the panel ignored Aronson (or ignored Drake's employment-related defenses).

The First Circuit's decision in Advest is also instructive here. In Advest, the appellant, a brokerage firm, appealed the district court's confirmation of an NASD arbitration award ordering a brokerage firm to restore shares of stock for wrongful liquidation of a client's account. The First Circuit noted that, notwithstanding the "extreme difficulty" of satisfying the burden of proof for manifest disregard where the arbitrators opt not to state the reasons for their decision:

> In certain circumstances, the governing law may have such widespread familiarity, pristine clarity, and irrefutable applicability that a court could assume the arbitrators new the rule and, notwithstanding, swept it under the rug.

Advest, 914 F.2d at 9-10.

The appellant contended that it presented federal case law authority to the panel as to the measure of damages after wrongful liquidation and argued that the panel's award of shares could not comport with this rule of law. Moreover, the court found that the appellee had not "articulated a cohesive alternative." Nonetheless, the court affirmed the district court's confrmation of the award on two grounds: (1) the court found that the federal case law authority cited by the appellant did not have such "widespread familiarity, pristine clarity, and irrefutable applicability" that the court could conclude that the arbitrators inevitably have recognized that it was controlling law and (2) the arbitrators inherently possess "wide latitude" in fashioning remedies. Advest, 914 F.2d at 9-10.

Similarly here, although Drake contended that Aronson was controlling law, it can hardly be said that it has such "widespread familiarity, pristine clarity, and irrefutable applicability" that the Court may conclude that the arbitrators necessarily recognized it as controlling authority. The Aronson case lacks "widespread familiarity:" Drake did not identify any other case that followed Aronson for the proposition he cited. Aronson lacks "pristine clarity:" the court's reason for finding the EFL in question a services contract is unclear. And Aronson was not "irrefutably applicable" to the present case: UBS vigorously disputed its applicability. According, Drake cannot establish that the panel inevitably recognized that Aronson was controlling law. Accordingly, this Court should deny Drake's Motion to Vacate the Arbitration Award.

### B. The NASD Arbitrators Did Not Manifestly Disregard Controlling Law Under the Standard Set by the Montes Decision.

Drake, apparently recognizing that he cannot satisfy the First Circuit's strict standard for establishing manifest disregard, relies upon the Eleventh Circuit's decision in Montes v. Shearson Lehman Bros., Inc., 128 F.3d 1456 (11th Circuit 1997). In Montes, the Eleventh Circuit narrowly held that where (1) the arbitrators are "flagrantly and blatantly urged" to disregard the law; (2) the record reflects that the arbitrators recognized that they were told to disregard the law; and (3) there is only "marginal evidence" to support the award, then the court may infer that the panel recognized controlling law and expressly disregarded it.

Drake's reliance upon Montes is misplaced for two reasons. First, to the extent that Montes recognizes a more lenient standard for establishing manifest disregard than the First Circuit in Tanner and Advest, as it apparently does, Montes is contrary to First Circuit precedent and should not be followed here. Second, the present case is readily distinguishable from Montes.

The present case is distinguishable from Montes because UBS did not urge the panel to disregard controlling law, much less to "flagrantly and blatantly" do so. Drake contends that "UBS argued that even if Aronson did apply, the arbitrators should ignore Aronson since Aronson did not appear to be sound." Drake Mem. at 5. A careful review of the record, however, shows that UBS never made such an argument to the panel.

In closing argument, UBS's arbitration counsel argued as follows:

> The Aaronson [phonetic] case is really not applicable here. Aaronson found that it was a services agreement. This contract – the EFLs that are at issue here expressly provide that it was not an employment contract. This takes us out of the ambit of Aaronson that it was an employment agreement. I think that in terms of the forgiveness provision we discussed here, also shows that there was no obligation on Mr. Drake's part to remain, no obligation on UBS's part to employ him as you would find in an employment agreement. And to the extent

-11-

> that <u>Aaronson</u> is based on finding that it was a contract for services, this is not a contract for services.
>
> But even if <u>Aaronson</u> were to apply, <u>Aaronson's</u> ruling is actually very [limited]. <u>Aaronson</u> was a denial of summary judgment. Summary judgment is, as you might know, is a process for resolving disputes without a hearing. It's where the parties simply submit papers, there's no live testimony, there are affidavits and argument, but there is no hearing. And so the <u>Aaronson</u> court really decided that under New York's special provision for allowing summary judgment on promissory notes, that the contract in <u>Aaronson</u> didn't qualify for that kind of summary judgment proceeding.
>
> And note there's nothing in <u>Aaronson</u> to suggest, however, that the agreement wasn't enforceable or that, in that instance, Paine Webber, was was not entitled to recover on the note. It just said that summary judgment, under New York's practice act, was inappropriate for resolution of that dispute.

(Jacobson Aff't Exh. F, at 48-49)

In the transcript set forth above (which was UBS's counsel's only references to the <u>Aronson</u> case at the hearing), UBS's counsel clearly does not request that the panel disregard <u>Aronson</u>. UBS's counsel's argument above distinguishes <u>Aronson</u> factually and procedurally in support of UBS's position. Indeed, far from asking the panel to disregard <u>Aronson</u>, UBS's counsel's statements indicate that if the panel found that <u>Aronson</u> applied, the panel could still rule in favor of UBS if it found that Drake's employment defenses were not persuasive. UBS did not ask the panel to ignore <u>Aronson</u>, and did not need to do so in order to prevail.

UBS made similar arguments in its Pre-Hearing Brief submitted to the Panel.[2] Drake contends that UBS also stated in its Pre-Hearing Brief that the holding in Aronson "does not appear to be sound" (Jacobson Aff't Exh. C, at 8). That is true, but UBS did not state anywhere in its Pre-Hearing Brief, as Drake contends, that the panel should therefore ignore Aronson. (See Jacobson Aff't Exh. C, at 8. As in its closing argument, UBS's argument in its Pre-Hearing Brief indicates that if the panel found that Aronson applied, the panel could still rule in favor of UBS if the panel found Drake's defenses lacked merit. Thus, UBS did not and had no need to ask the panel to ignore Aronson.

The present case is also distinguishable from Montes on the grounds that, whereas in Montes there was evidence that the panel understood that they were being asked to disregard controlling law, there is no evidence in the record here that the panel recognized that they were being urged to disregard controlling law (not surprisingly, as they were not asked to disregard

---

[2] The text of UBS's Pre-Hearing Brief regarding Aronson is as follows:

Drake's reliance on PaineWebber Jackson & Curtis, Inc. v. Aronson, 495 N.Y.S.2d 396 (1st Dept. 1985) is misplaced. In *Aronson*, the court found that a promissory note signed by an employee that contained a provision for forgiveness of the note in three annual installments provided that the employee remained employed somehow constituted a contract for the provision of services. Aronson, 495 N.Y.S.2d at 397.

Significantly, the Notes in question here, unlike the notes in Aronson, expressly provide that they do not create an employment contract, as follows:

**Not an Employment Contract.** The Employee expressly acknowledges that this Note is not an employment contract or an agreement to employ him/her for a specified period of time or a promise of continued employment with PaineWebber for any period whatsoever.

Note at 5.

Thus, Aronson's conclusion that the promissory note in that case was actually an employment contract does not apply here, because Drake's Promissory Notes expressly provided that they did not constitute employment contracts.

Moreover, the court's reasoning in Aronson does not appear to be sound. There seems to be no basis whatsoever for the court's inference that the three-year forgiveness feature in the note created a contract for services. On the contrary, the three-year forgiveness provision clearly did not require the employee to provide any services: he or she was free to resign at any time.

Finally, in Aronson, the Court merely denied summary judgment (judgment without a full trial) on the note -- the court did not find that the note was unenforceable.

For all of these reasons, Drake's reliance on Aronson is misplaced. (Jacobson Aff't Exh. C., at 8)

controlling law). Finally, the present case is distinguishable from Montes on the grounds that, unlike Montes, where the court found that there was only "marginal evidence" to support the award, here there was ample basis in fact and law for the panel to find that Aronson was not applicable

Accordingly, Drake failed to meet his burden of proving that the panel manifestly disregarded the law, and this Court should deny his Motion to Vacate.

### C.  This Court Should Not Remand This Case to Arbitration.

This Court should reject Drake's request, in the alternative, that the Court remand the case to the arbitrators to clarify if "the arbitrators heeded UBS's call to disregard Aronson" if the Court is hesitant to vacate the Award. First, as discussed above, UBS did not urge the arbitrators to disregard Aronson. Second, Drake's request is inconsistent with the heavy burden that the First Circuit has recognized in Advest and Tanner for vacatur based on manifest disregard for law, particularly where the arbitrators have opted not to provide reasons for their decision, as they so opted here. Drake's motion should be denied if he has not met his burden of proof. In Tripi v. Prudential Securities, Inc., 303 F.Supp.2d 349 (S.D.N.Y. 2003), cited by Drake, the court remanded the case to the arbitrators for an explanation of their damages award, where the court was otherwise going to vacate the award on the grounds that the court found no rational basis in the record for the arbitrator's damages award. Tripi is distinguishable from this case as, here, there is ample evidence of a rational basis upon which the arbitrators rendered their award. Consequently, this Court should deny Drake's Request for Remand and grant UBS's Motion for Confirmation of the NASD Arbitration Award.

## II. DRAKE FAILED TO ESTABLISH THAT THE ARBITRATORS EXHIBITED EVIDENT PARTIALITY AND UNDUE MEANS IN THE HANDLING OF THE HEARING.

Under First Circuit precedent, evident partiality is more than just the appearance of possible bias. Rather, evident partiality means a situation in which "a reasonable person would have to conclude that an arbitrator was partial to one party in an arbitration." JCI Communications, Inc. v. Int'l Brotherhood of Elect. Workers, 324 F.3d 42, 51 (1st Cir. 2003) citing Nationwide Mut. Ins. Co. v. Home Ins. Co., 278 F.3d 621, 626 (6th Cir. 2002). The burden is on Drake to establish evident partiality. See JCI Communications, 324 F.3d at 51.

Drake contends that the panel showed evident partiality and undue means as a result of the panel's decisions (1) to permit UBS to produce two documents (an interest rate calculation and attorney time billing records) after the panel's March 17, 2004 deadline; (2) to admit attorney time billing records in support of its fee petition that contained references to settlement communications, but from which the contents of the settlement communications had been redacted; and (3) to admit billing records that contained reference to the fact that UBS conducted due diligence on the arbitrators in responding to the NASD's arbitrator ranking list, thereby allegedly intimidating the arbitrators.

### A. The Panel's Decision To Permit UBS To Produce Its Interest Rate Calculation And Attorney Billing Records.

Under both federal law and NASD rules, absent irrationality, an arbitrator has the discretion to set the arbitration procedures. See M&L Power Services, Inc. v. American Networks Int'l, 44 F.Supp.2d 134, 142 (D.R.I. 1999) citing Hoteles Condado Beach, La Concha and Convention Center v. Union De Tronquistas, 763 F.2d 34, 38-39 (1st Cir. 1985); see also NASD Rule 10321(c) (arbitrator may, but is not required, to exclude documents not part of the pre-hearing exchange).

Drake objected to the panel that UBS produced the interest rate calculation on April 2, 2004, which was four days before the start of the hearing, and produced the attorney time billing records on April 4, 2004, two days before the start of the hearing.

In response to Drake's objection that UBS's production of the interest rate calculation and time-billing records was untimely, UBS contended that production of these documents did not violate the panel's scheduling order because (1) the panel's order required the production of documents relating to UBS's damages calculation, and the interest calculation and fee petition was not encompassed by that order; (2) the interest rate calculation was a demonstrative exhibit that was not in existence at the time production deadline; (3) the time billing records were an attachment to UBS's fee affidavit which was not in existence at the time of the deadline; (3) that UBS had provided the rate table from which the interest calculation was made by the March 17, 2004 deadline; (4) that Drake was not prejudiced because, notwithstanding the delay (and in particular the limited scope of the interest rate calculation) Drake had an ample opportunity to review and respond to the documents prior to the hearing; and (5) it was not uncommon in an NASD arbitration proceedings for documents to be produced after the exchange deadline. (Jacobson Aff't Exh. E, at 9-14.) Moreover, the panel deferred ruling on the admissibility of the time billing records until the second day of the hearing to provide Drake with additional time for review and offered Drake additional time over the lunch break on day two of the hearing for review. (Jacobson Aff't Exh. E, at 158-162, 21-217)

### B. The Panel's Decision To Admit Attorney Billing Records Containing Redacted References To Settlement Discussions And References To UBS's <u>Due Diligence Relating To Arbitrator Ranking</u>.

Drake contends that the panel's admission of attorney time billing records containing references to settlement communications, but from which the contents of those communications

were completely redacted was prejudicial, on the grounds that the "timing and sequence of settlement offers and counter offers... gave the impression that Drake was to blame for the failure of the case to settle." (Jacobson Aff't Exh. E. at 48, 161-162, 210-211). Drake also contended that the reference in the billing records to the fact that UBS conducted due diligence relating to the arbitrators because of the alleged possibility that the arbitrators would be intimidated if they knew that the parties conduct such due diligence. (Jacobson Aff'd Exh. E, at 212-216).

In Bowles Financial Group, Inc. v. Stifel, Nicolaus & Co., 1993 WL 663326 (W.D.Okla. 1993), the court considered the situation where a party disclosed the contents of a settlement offer to the arbitrators. The Bowles court cited a long line of cases and commentators for the proposition that settlement offers are not admissible to prove liability. However, the court found that the disclosure of the contents of the settlement offer to the arbitrators did not constitute fundamental unfairness where the arbitrators said they would not consider the offer and that their decision on liability would not be based upon having seen the offer.

Here, the present case is distinguishable because it is undisputed that UBS redacted the contents of the settlement communications from the time billing records before UBS attempted to have the records admitted. Moreover, UBS submitted the redacted time billing records in support of its fee petition – not to establish liability for repayment of the EFLs. Drake contends that the NASD Arbitrator's Manual provides that arbitrators should not admit evidence of settlement offers made or received. However, the likelihood is that the manual should be interpreted as recognizing that it is the contents of settlement offers that are prejudicial and should not be admitted to establish liability. Accordingly, the manual should not be interpreted

as directing arbitrators not to admit references to settlement offers that have been redacted of their content in support of a fee petition.

Drake's contention that the arbitrator's would be intimidated by the disclosure in the time billing records that UBS conducted due diligence on arbitrators is belied by the panel chair's comments in overruling Drake's objection to their admissibility. The chairman's comments make clear that the panel recognized that parties conduct such due diligence as a standard part of their arbitration preparations and that the panel members were not disturbed, much less intimidated, by that fact. (Jacobson Aff't Exh. E, at 216)

Accordingly, whether taken single or in the aggregate, Drake's reliance on the panel's decisions to admit UBS's interest rate calculation and redacted time billing records fails to establish that the panel's decisions were an abuse of discretion, much less that the panel acted with evident partiality toward UBS or that Drake was denied a fundamentally fair hearing.

## Conclusion

Wherefore, for all of the foregoing reasons, Drake's Motion to Vacate Arbitration Award Or Alternatively, Request for Remand should be denied in its entirety, Drake should be granted no relief, the Court should grant UBS's cross-motion for confirmation, and enter such other relief as the Court deems just and equitable.

Respectfully submitted:

_____
One of the attorneys for Respondent
UBS Financial Services Inc.

Kevin G. Mahoney
Menard, Murphy & Walsh LLP
60 State Street
34th Floor
Boston, MA 02109
Tel.: (617) 832-2500
Fax: (617) 832-2550

OF COUNSEL:
William M. Ejzak
Schuyler, Roche & Zwirner, P.C.
Suite 3800, One Prudential Plaza
130 East Randolph Street
Chicago, Illinois 60601
Tel:    (312) 565-2400
Fax:   (312) 565-8300

## Certificate Of Service

The undersigned hereby certifies that on October 26, 2004, he caused a copy of the foregoing Stipulation and Request for Order to be served upon:

>William A. Jacobson
>Shanna L. Pitts
>Law Offices of William A. Jacobson, Inc.
>850 Turks Head Building
>Providence, Rhode Island 02903

by facsimile and placing true copies of same in a properly addressed, postage prepaid envelope and causing that envelope to be deposited in the United States Mail at  Boston, Massachusetts.

405657